UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 26-cv-20670-BLOOM/Elfenbein

JANE DOE,

     Plaintiff,

v.

RONALD DAVID FORD
and DOES #1–20,

     Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Ronald David Ford's ("Defendant") Motion to Dismiss, ECF No. [18] ("Motion"). Plaintiff Jane Doe ("Plaintiff") filed a Response in Opposition, ECF No. [26], to which Defendant filed a Reply, ECF No. [27]. The Court has considered the Motion, the supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I.  BACKGROUND

Beginning in early 2017, Defendant initiated contact with Plaintiff through social media and private messaging platforms and rapidly cultivated an intimate relationship. ECF No. [1] ¶ 24. Defendant repeatedly represented to Plaintiff that he intended to marry her, discussing engagement rings, weddings, and future family life and encouraging Plaintiff to envision a permanent life with him. *Id.* ¶ 25. Defendant solicited Plaintiff's ring size, discussed specific diamond preferences, and engaged Plaintiff in detailed planning of wedding ceremonies in Bali, Indonesia, New York, Tennessee, and other locations. *Id.* ¶ 26. Defendant proposed joint travel to meet Plaintiff's parents and discussed gift-giving customs. *Id.* ¶ 27. Defendant encouraged Plaintiff to provide intimate

photographs and videos, representing that he cherished them and would preserve them privately. *Id.* ¶ 28. These false representations were made for the purpose of inducing Plaintiff's trust, dependency, and sexual compliance. *Id.* ¶ 29. In reliance on these Defendant's promises, Plaintiff deepened her emotional attachment, became increasingly isolated, and submitted to Defendant's escalating demands. *Id.* ¶ 30. However, Defendant never intended to marry Plaintiff; and merely represented himself as Plaintiff's future spouse while cultivating dominance and control. *Id.* ¶ 31.

In July 2017, Defendant informed Plaintiff that he lived alone "except for" a man named Steve, whom Defendant described as his "body man" and longtime associate. *Id.* ¶ 33. Defendant portrayed Steve as trustworthy and an important part of his personal life. *Id.* ¶ 34. On July 29, 2017, Plaintiff visited Defendant at his residence in Topanga Canyon, California. *Id.* ¶ 37. Defendant invited Steve Giordano into an intimate setting and pressured Plaintiff to perform sexually. *Id.* ¶ 38. Despite Plaintiff's repeated refusals, Giordano sexually assaulted Plaintiff in Defendant's presence, and Defendant encouraged, condoned, and failed to intervene in the assault. *Id.* ¶¶ 39, 40.

In November 2017, Defendant staged a false proposal in New York City. *Id.* ¶ 41. During the November 2017 New York trip, Defendant told Plaintiff that an unidentified woman had accused him of sexual misconduct. *Id.* ¶ 42. He denied any wrongdoing and portrayed himself as unfairly targeted. *Id.*

In December 2017, Plaintiff and Defendant traveled together to Miami Beach, Florida, staying at the Hotel Nautilus. *Id.* ¶ 43. During that stay, Defendant struck Plaintiff and used physical force, intimidation, and threats to compel her to submit to non-consensual sexual acts against her will. *Id.* ¶ 44. Defendant further compelled Plaintiff to walk naked through hotel

hallways and elevators and subsequently coerced Plaintiff into engaging in sexual acts at the Miami Velvet nightclub in front of others. *Id.* ¶ 45.

In June 2018, at Defendant's lake house in Lenoir City, Tennessee, Defendant arranged for, hired, and paid a female escort for the purpose of involving Plaintiff in a coerced sexual encounter. *Id.* ¶ 46. Using emotional manipulation, intimidation, and implicit threats of retaliation, Defendant compelled Plaintiff to engage in sexual acts with the escort and himself, despite Plaintiff's clear unwillingness and lack of consent. *Id.* ¶ 47. Plaintiff complied out of fear of retaliation. *Id.* ¶ 48.

In December 2018, Defendant arranged and coordinated paid sexual encounters involving Plaintiff, escorts, and third parties at the Ritz-Carlton Hotel in Fort Lauderdale, Florida. *Id.* ¶ 49. Defendant facilitated these encounters using cash payments, secrecy, and deliberate efforts to conceal the arrangements from hotel staff and others. *Id.* ¶ 50. Defendant pressured Plaintiff to participate through emotional manipulation, intimidation, and threats of abandonment, humiliation, and retaliation. *Id.* ¶ 51. When Plaintiff resisted and attempted to withdraw her consent, Defendant retaliated by summoning hotel security and causing Plaintiff to be forcibly removed from the room. *Id.* ¶ 52.

In June 2019, while at Defendant's lake house in Lenoir City, Tennessee, Defendant engaged in sexual intercourse with Plaintiff without her consent. *Id.* ¶ 53. At the time of the incident, Plaintiff was asleep and unable to give knowing or voluntary consent. *Id.* ¶ 54. Defendant initiated and completed the sexual act through use of force and intimidation. *Id.* ¶ 55.

During Plaintiff and Defendant's relationship, Defendant engaged in sexual activity with Plaintiff without consistently using barrier protection and while also engaging in sexual activity with other partners. *Id.* ¶ 56. Defendant did not disclose to Plaintiff his sexual history, infection

status, or the risks associated with unprotected sexual activity. *Id.* ¶ 57. In 2019, Plaintiff was diagnosed by a medical provider with high-risk human papilloma virus ("HPV"). *Id.* ¶ 58. In May 2025, Plaintiff underwent a Loop Electrosurgical Excision Procedure to remove precancerous cervical lesions associated with the HPV infection. *Id.* ¶ 59. After Plaintiff's diagnosis and treatment, Defendant acknowledged her medical condition and provided partial financial assistance toward related medical expenses. *Id.* ¶ 60.

As a result of Defendant's conduct throughout the relationship, Plaintiff has experienced persistent symptoms of post-traumatic stress, anxiety, depression, and dissociation and has sought and received mental health treatment for these conditions. *Id.* ¶ 63.

In February 2026, Plaintiff filed this lawsuit, asserting eight counts: Human Trafficking in violation of 18 U.S.C. § 1595 (Count I), Sexual Battery and Battery (Count II), Assault (Count III), False Imprisonment (Court IV), Negligent Transmission of Sexually Transmitted Disease (Count V), Intentional Infliction of Emotional Distress (Count VI), Fraud and Fraudulent Inducement (Count VII), and Aiding and Abetting and Civil Conspiracy (Count VIII). ECF No. [1].

In April 2026, Defendant filed the Motion, arguing that Plaintiff's Complaint fails to state a claim upon which relief may be granted and should therefore be dismissed. ECF No. [18] at 1. Plaintiff responds that the Complaint alleges facts sufficient to state plausible claims for relief. ECF No. [26] at 1. Defendant replies that dismissal is warranted. ECF No. [27].

## II.    LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III.   DISCUSSION

### A.  Shotgun Pleading

Defendant first argues that the Complaint is a shotgun pleading for four reasons. First, the Complaint's eight counts each adopt "the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." ECF No. [18] at 5. Second, the Complaint is "replete with conclusory, vague, and

immaterial facts." *Id*. Third, Count VIII does not separate into a different count each cause of action. *Id*. Fourth, the Complaint asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. *Id*.

Plaintiff responds that the Complaint "provides sufficient notice of the claims and the grounds upon which they rest." ECF No. [26] at 3. The Complaint includes "the who, what, when, and where of Defendant's actions." *Id.* at 4. There is no *per se* rule that incorporation of prior allegations renders a complaint defective, so long as the complaint provides fair notice. *Id.* at 5–6. Even if the Complaint is "imperfect in form," the proper remedy is repleading, not dismissal with prejudice. *Id.* at 6.

Derived from Federal Rule of Civil Procedure 8(a)(2), a shotgun pleading is defined as "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading[.]" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128–29 (11th Cir. 2001)). Shotgun pleadings are condemned by the Eleventh Circuit, which has instructed district courts to dismiss shotgun pleadings as "fatally defective." *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009) (citations omitted).

The Eleventh Circuit has identified four types of shotgun pleadings, the "unifying characteristic" of which being that all shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The first and "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second type of shotgun

6

pleading is the complaint that is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third is the pleading "that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1323. Fourth is the pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The Court finds that only Count VIII constitutes a shotgun pleading. It is true that each count incorporates all that came before it. ECF No. [1] ¶¶ 68, 78, 87, 94, 103, 111, 119, 132. But "notice is the touchstone of the Eleventh Circuit's shotgun pleading framework." *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) (quoting *Cont'l 332 Fund, LLC v. Albarelli*, 317 F. Supp. 3d 1124, 1139 (M.D. Fla. 2018)). "Even if a complaint references previously asserted facts in each count, 'that does not necessarily make it a shotgun pleading.'" *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1319 (S.D. Fla. 2017) (quoting *Martins v. Royal Caribbean Cruises, Ltd.*, 174 F.Supp.3d 1345, 1358 (S.D. Fla. 2016)). Indeed, the Eleventh Circuit has clarified that simply incorporating all previous paragraphs by reference does not automatically render a complaint a shotgun pleading. *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019) (overturning the district court's dismissal of a complaint as a shotgun complaint even though it adopted the allegations of all preceding counts).

Here, the Complaint is adequately organized such that it is not "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Indeed, nothing in the Complaint prevents Defendant from "fram[ing] a responsive pleading." *Id*. Because nothing in this Complaint prevents the Court from determining the sufficiency of each claim or Defendant from

7

framing a response, the Court declines to find that the Complaint violates the first type of shotgun pleading.

Similarly, the Court does not find that the Complaint is replete with conclusory, vague, or immaterial facts. Defendant does not point to any such facts, and the Court cannot discern any upon its own review. Certainly, some of Plaintiff's allegations are conclusory in nature. See, e.g., ECF No. [1] ¶ 32. But a complaint may contain some irrelevancies as long as it "gives the defendant adequate notice of the claims against it and the grounds upon which each claim rests." *Pinson*, 942 F.3d at 1208 (cleaned up and quoting *Weiland*, 792 F.3d at 1323). And here, while it may not be "a model of efficiency or specificity," the Complaint still puts Defendant on notice of the claims against him. *Weiland*, 792 F.3d at 1325.

Next, the Court does not find that Plaintiff's Complaint fails to identify which Defendants are responsible for which acts or omissions. Again, Defendant Fails to point to any examples within the counts for which he cannot discern what acts or omissions are attributed to him. Nor could he, as his role in each alleged act of misconduct is easily discernable from the background facts and counts. Of course, there are counts that refer to all Defendants, but that is not inherently a problem. "[T]he fourth [shotgun pleading] category [ ] refers to cases where no specific defendants are named, not where all the defendants are explicitly named and, as explained above, all allegations go to all defendants." *Brown v. Dunn*, 760 F. Supp. 3d 1326, 1344 (M.D. Ala. 2024).

However, as to Count VIII, the Court agrees that aiding and abetting and civil conspiracy are distinct causes of action that should not be commingled. The two are distinct theories with distinct elements, even though much of the same evidence may support both. Under Florida law, a claim for civil conspiracy requires a plaintiff to allege "(1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some

overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). A claim for aiding and abetting requires "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, *8 (M.D. Fla. Aug. 22, 2019). Insofar as those claims are distinct, they must be pled separately.

However, an error of this sort does not mandate dismissal. Indeed, the Eleventh Circuit has explained, "When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give [the litigant] one chance to replead before dismissing [the litigant's] case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro Inc., v. Shabents*, 878 F.3d 1291, 1296 (11th Cir. 2018). Thus, the Court will provide Plaintiff leave to amend the pleading deficiencies.

### B.  Human Trafficking (Count I)

Defendant also argues that Count I for Human Trafficking should be dismissed for failure to state a claim. ECF No. [18] at 9. Defendant argues that Plaintiff fails to plead any facts that the TVPRA was violated *as to Plaintiff*. *Id*. Specifically, Plaintiff fails to allege anything of value given or received for her participation, as "promises of marriage" or "the continuation of a relationship" do not constitute a thing of value. *Id.* at 11. Moreover, threats to discontinue a romantic relationship does not constitute "coercion" as defined in the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Fundamentally, the allegations do not describe commercial sex acts *with respect to Plaintiff*; at most, a commercial sex act is alleged with respect to the escorts. *Id.* at 12–13.

9

Plaintiff responds that the Complaint plausibly alleges that Defendant used fraud, coercion, and a pattern of abuse to cause Plaintiff to engage in commercial sex acts. ECF No. [26] at 11. Moreover, the Complaint plausibly alleges a "commercial sex act" insofar as it alleges that "anything of value" was exchanged. *Id.* at 14. Finally, the Complaint plausibly alleges Defendant's participation in a trafficking venture, as well as an interstate commerce nexus. *Id.* at 16–22.

Defendant replies that Plaintiff misconstrues the TVPRA's requirements. ECF No. [27] at 2. Plaintiff fails to show that *she* was the victim of trafficking, as contemplated by the TVPRA. *Id.* at 3. Moreover, none of the influences on Plaintiff's engagement in the sex acts described constitutes "force, threats of force, fraud, coercion, or a combination thereof." *Id.* at 4.

The Court begins by acknowledging that the acts described by Plaintiff are patently odious and shock the conscience. That said, the Court agrees with Defendant that Plaintiff has not plausibly alleged that she was the victim in the context of a commercial sex act. In general, the TVPRA provides that "a sex trafficking victim may bring a civil action for damages against the perpetrator 'or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.'" *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *2 (11th Cir. Feb. 9, 2024) (quoting 18 U.S.C. § 1595(a)). Relevant here, the TVPRA has two crucial components. First, a plaintiff must allege that she was made to engage in a "commercial sex act," which is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1291(e)(3). Second, because of the phrase "on account of," there must be "a causal relationship between the thing of value and the sex acts." *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1231 (M.D. Fla. 2023) (citation omitted).

The statute's use of the phrase "anything of value" has been construed broadly to not require a monetary or financial aspect. *See, e.g.*, *United States v. Nilsen*, 967 F.2d 539, 542 (11th Cir. 1992) ("Congress'[s] frequent use of 'thing of value' in various criminal statutes has evolved the phrase into a term of art which the courts generally construe to envelop[ ] both tangibles and intangibles"); *United States v. Raniere*, 55 F.4th 354, 362 (2d Cir. 2022) ("for the purposes of [Section 1591], monetary worth is not the sole measure of 'value' [in the phrase 'anything of value']"). Plaintiff's interpretation, however, stretches the phrase beyond its logical bounds.

For instance, Plaintiff alleges that Defendant received "voyeuristic gratification" and "payment-facilitated sexual encounters" as a result of her participation in the acts and that this renders the sexual acts "commercial" in nature. ECF No. [1] ¶ 74. But "sexual gratification alone" is insufficient to allege a commercial sex act. *Doe v. Fitzgerald*, No. CV2010713MWFRAOX, 2022 WL 425016, at *7 (C.D. Cal. Jan. 6, 2022). "Indeed, Plaintiff's interpretation would render the TVPRA's use of the word 'commercial' meaningless." *Croft v. Dolan*, No. CV 24-371 PA (AGRX), 2024 WL 4536309, at *3 (C.D. Cal. Sept. 17, 2024), *aff'd*, No. 24-6150, 2025 WL 3720844 (9th Cir. Dec. 23, 2025) (citations omitted).

Similarly, Plaintiff alleges that Defendant received "control over Plaintiff." ECF No. [1] ¶ 74. The Court is aware of no authority, particularly within this circuit, that control over a plaintiff constitutes something of value for purposes of alleging a commercial sex act.

Turning to the next alleged "thing of value," there is no doubt that Plaintiff alleges that Defendant received travel and lodging. ECF No. [1] ¶ 74. But there is no causal element linking the travel and lodging to the sex acts. *Treminio*, 649 F. Supp. 3d at 1231. As alleged, Defendant received the lodging because the location was either his home or an "arranged and coordinated"

11

space at a hotel. ECF No. [1] ¶¶ 46, 49, 53. In other words, Defendant received travel and lodging because he either owned a home or paid for the lodging; the sex acts played no role in that benefit.

Next, Plaintiff alleges that Defendant received "sexual access" to Plaintiff. ECF No. [1] ¶ 74. It is unclear precisely what this allegation means, making it difficult for the Court to assess whether it constitutes a thing of value. But to the extent that it means Defendant was able to watch Plaintiff engage in sexual activities, that is no different than Plaintiff's allegation of gratification, which is not in and of itself a thing of value. To the extent it means that Defendant gained control over Plaintiff for purposes of later engaging in sex acts with her, the Court once again sees no legal authority standing for the proposition that control is a "thing of value."

Fundamentally, the benefits allegedly received here would stretch the phrase "anything of value" beyond its logical bounds to sweep in a range of sex acts inconsistent with the mandate of the TVPRA. Plaintiff has simply not alleged that, with respect to *her* participation, these sex acts were commercial in nature. For these reasons, the Court finds that Count I is subject to dismissal.[1]

The Court finds that one additional reason supports dismissal. The TVPRA has a causation requirement—it requires that a victim's participation be caused by "force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means."[2] 18 U.S.C. § 1591(a).

---

[1] Plaintiff cites extensively to Second Circuit authority conveying a very broad definition of "anything of value" and, by extension, "commercial sex act." *See* ECF No. [26] at 15 n.8 and n.9 (citations omitted). These out-of-circuit sources, while worth due consideration, are not binding on the Court, and the Court is aware of no Eleventh Circuit authority adopting a similarly broad understanding of "anything of value."

[2] "Coercion" is defined in the TVPRA to mean:

(A) threats of serious harm to or physical restraint against any person;
(B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
(C) the abuse or threatened abuse of law or the legal process.

15 U.S.C.§ 1591 (e)(2).

The Complaint identifies two instances by the term "sex trafficking"—the events in June 2018 at Defendant's lake house and the December 2018 events at the Fort Lauderdale Ritz-Carlton. ECF No. [1] at 9–10. As to the first, Plaintiff alleges that Defendant "used emotional manipulation, intimidation, and implicit threats of retaliation" to cause Plaintiff to engage in sex acts. *Id.* ¶ 47. Plaintiff defined the implicit threat as including "physical violence, abandonment, humiliation, and further psychological abuse." *Id.* ¶ 48. Plaintiff fails to identify what an "implicit threat" is and largely uses non-specific, conclusory statements, which are insufficient. See *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469 (E.D.N.C. 2024) (determining that an allegation that the plaintiff was "forced to have repeated visits from sex buyers" was conclusory because it provided "no facts from which any inference of force, threats, fraud, or coercion could be drawn, besides its conclusory invocation of force"). More glaringly, with respect to the December 2018 Ritz-Carlton events, Plaintiff alleges that her participation was caused by "emotional manipulation, intimidation, and threats of abandonment, humiliation, and retaliation," none of which falls into the proscribed causal influences identified in the TVPRA. Such insufficient pleading of causation also warrants dismissal.

However, the Supreme Court and Eleventh Circuit are clear that leave to amend should be freely given, unless amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004). In this case, Plaintiff could allege facts that would support a TVPRA claim. For instance, if *Plaintiff's* lodging or vacations were given in return for her engaging in sex acts, that might support a finding of a commercial sex act under the TVPRA. *See, e.g.*, *Craig v. Fleming*, No. 4:22-CV-00870-BSM, 2024 WL 894895, at *4 (E.D. Ark. Feb. 29, 2024) ("[A]llegations that [the defendant] gave her gifts and arranged for

a lease on her apartment also sufficiently plead a causal relationship between a sex act and the exchange of these items.").

Thus, the Court will dismiss Count I with leave to amend.[3]

### C. Plaintiff's State Law Claims

Defendant raises arguments for dismissal of Plaintiff's remaining claims, which arise under state law. ECF No. [18] at 16–20. Since the Court finds that Plaintiff's federal claims must be dismissed, prevailing law counsels that the Court should decline to retain pendent jurisdiction over Plaintiff's state law claims and accordingly dismiss those claims without prejudice. 28 U.S.C. S 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). Especially at these early stages of the proceedings, the Court sees no reason to retain jurisdiction of Plaintiff's state law claims.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss, **ECF No. [18]**, is **GRANTED.**

2.  The Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an Amended Complaint in accordance with this Order **no later than August 26, 2026**. The failure to file an Amended Complaint will result in

---

[3] Because the Court finds dismissal warranted on the above grounds, the Court does not reach Defendant's concern that Plaintiff does not have standing, as she cannot trace her alleged injuries to any unlawful conduct. ECF No. [18] at 14. However, the Court pauses to state the following. Plaintiff has plainly alleged concrete injuries stemming from, among other things, the allegedly unlawful sex acts. ECF No. [1] ¶ 63. What Plaintiff has failed to allege at this point is that the sex acts were, in fact, unlawful, and, in that regard, Plaintiff lacks standing under the Complaint as written. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (To have standing, "[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."). However, if Plaintiff is able to amend to adequately plead that the sex acts were unlawful, she will have standing. Thus, the Court need not reach this point.

dismissal of this case without prejudice and without further notice.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 12, 2026.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record